IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CANAL INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:11-cv-400-MEF |
| | ) | (WO – Publish) |
| REGENCY CLUB OWNERS | ) | |
| ASSOCIATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court are cross-motions for summary judgment in an insurance coverage

dispute arising out of a state court lawsuit brought by a homeowners' association against the

real estate developer, the general contractor, and various subcontractors involved in a

construction project of condominiums located in Baldwin County, Alabama. Plaintiff Canal

Indemnity Company ("Canal") filed a Complaint in federal court on May 26, 2011, seeking

a declaratory judgment that it does not owe the defendants in the state court litigation any

obligations or insurance benefits under a general commercial liability policy it issued. Since

filing its federal action, Canal has resolved its coverage disputes with all defendants except

three: (1) Defendant Park Lane Construction ("Park Lane"), the general contractor for the

condominiums; (2) G&G Roofing, Inc. ("G&G Roofing"), the subcontractor for the roofing

work on the condominiums; and (3) Defendant Paul Nicholson d/b/a GG Roofing ("GG Roofing" or "Nicholson"), the named insured under the liability insurance policy issued by Canal that is at issue in this case.  G&G Roofing and Nicholson have failed to answer or otherwise appear in this case, and the Clerk of Court has entered default against them upon proper application from Canal.  (*See* Docs. ##103 & 104.)[1]

This cause is now before the Court on Canal's Second Motion for Summary Judgment (Doc. #78)[2] and Park Lane's Motion for Summary Judgment (Doc. #82).  For the reasons set forth below, the Court finds that Canal's Second Motion for Summary Judgment is due to be GRANTED, and that Park Lane's Motion for Summary Judgment is due to be DENIED.

## II. JURISDICTION AND VENUE

The Court has diversity jurisdiction over Canal's claims under 28 U.S.C. § 1332.  The parties do not claim that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper under 28 U.S.C. § 1391(b), and the Court finds adequate allegations supporting both.

---

[1]   Although the Clerk of Court has entered defaults against G&G Roofing and Nicholson, no default judgment has been entered against these two defendants.  *See Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 864 n.5 (11th Cir. 2007) ("A clerk's entry of default, pursuant to Rule 55(a), is distinct from a judgment by default entered by the clerk, pursuant to Rule 55(b)(1), or by the court, pursuant to Rule 55(b)(2).").

[2]   The Court denied Canal's first Motion for Summary Judgment with leave to refile by Order dated April 27, 2012 (Doc. #68), following a telephonic status conference in which all parties, except Park Lane, represented that a *pro tanto* settlement had been reached on the insurance coverage dispute and agreed that a stipulation of dismissal as to these claims would be filed.

### III. RELEVANT FACTS

**A.      Underlying Action in State Court**

This case arises out of a state court suit (hereinafter referred to as the "underlying action") brought by the Regency Club Condominiums Owners Association (the "Association") against the developer, Regency Club Condominiums, LLC ("Regency"), the general contractor, Park Lane, and various subcontractors, including G&G Roofing. Park Lane was hired by Regency to be the general contractor for the construction of the condominiums. Park Lane then subcontracted the roofing work for the condominiums to G&G Roofing.[3]

The Association's state complaint included negligence, wantonness, breach of warranty, breach of contract, and misrepresentation claims for the purported faulty construction of the condominiums against Park Lane, Regency, and the various subcontractors; the Association also alleged that Regency breached express warranties in violation of the Alabama Uniform Condominium Act, Alabama Code § 35-8A-413, and its fiduciary duties in violation of Alabama Code § 35-8A-303(a). (State Compl., Pl.'s Ex. 8, Doc. #79-8.)

Park Lane filed a cross-claim against G&G Roofing in the underlying action on July 28, 2010, asserting breach of contract, breach of warranty, negligence, and indemnity claims. (Pl.'s Ex. 9, Doc. #79-9.) The Association obtained a default judgment against G&G Roofing

---

[3]      Neither Nicholson nor his business, GG Roofing, were named as defendants in the underlying action. (*See* State Compl., Pl.'s Ex. 8, Doc. #79-8.)

in the underlying action on November 16, 2010, in the amount of $251,383.00, plus interest and costs.  (Pl.'s Ex. 12, Doc. #79-12.)  On March 31, 2011, Regency filed a cross-claim against G&G Roofing, asserting claims of negligent and/or wanton performance of their duties and for indemnity.  (Pl.'s Ex. 10, Doc. #79-10.)

The Association, Park Lane, and Regency informed the state court on May 22, 2012, that they had resolved their disputes and moved the state court to dismiss with prejudice any and all claims among and between them in the underlying action.  (Pl.'s Ex. 16, Doc. #79-16.) On May 24, 2012, the state court dismissed those claims with prejudice.  (Pl.'s Ex. 17, Doc. #79-17.)

## B.   Summary Judgment Facts

The facts of this federal action are largely undisputed.  On October 5, 2005, G&G Roofing, an Alabama roofing corporation owned and operated by Mohammed Gwandu ("Gwandu"), contracted with Park Lane to perform the roofing work on the construction of the Regency Club Condominiums.  (Pl.'s Ex. 13, Doc. #79-13, at 2.)  When G&G Roofing entered into this subcontract with Park Lane, Paul Nicholson—a friend and sometimes business partner of Gwandu and the sole proprietor of another roofing business, GG Roofing—was the named insured under a commercial general liability policy (the "Policy") issued to Nicholson by Canal.  (Pl.'s Ex. 1, Doc. #79-1, at 2.)  Nicholson had purchased the Policy from Canal on August 20, 2004, under the name Paul Nicholson d/b/a GG Roofing.[4]

---

[4]   The Policy, bearing number GL19346, had effective coverage dates from August 20, 2004, to August 20, 2005.  (Pl.'s Ex. 1, Doc. #79-1.)  This policy was renewed two times under the

(Pl.'s Ex. 1, Doc. #79-1, at 2.)

When Nicholson purchased the Policy, and while G&G Roofing was performing the roofing work for Park Lane on the condominiums, the two businesses—GG Roofing and G&G Roofing—were operating from the same mailing address.  Gwandu gave Nicholson some money to help purchase the Policy with Canal, but Nicholson never purchased insurance for Gwandu's company, G&G Roofing, and he never listed G&G Roofing in the Policy as a named insured or as an additional insured. (Sworn Testimony of Paul Nicholson ("Nicholson Testimony"), Doc. #87, at 15:17–16:3.)

Although Nicholson is not an officer, director, or shareholder of G&G Roofing, he and Gwandu had performed at least two roofing jobs together under the following arrangement: Nicholson would add Gwandu's contractors as additional insureds to the Policy that he procured through Canal (and which named GG Roofing as the insured), provided that Gwandu would hire Nicholson to be the supervisor on the particular roofing job covered by the insurance and would pay him a percentage of the fees collected from the job.[5] (Nicholson Testimony, Doc. #87, at 8:2–9:12; 10:13–11:23.)  This arrangement allowed Nicholson to work on larger-scale commercial jobs for which Gwandu had the proper license but Nicholson did not, and at the same time, allowed Gwandu to avoid purchasing liability

same policy number, first on August 20, 2005, and then again on August 20, 2006, and was cancelled by Nicholson on June 30, 2007.  (Pl.'s Exs. 2 & 3, Doc. #79.)

[5]   Because the parties cannot locate Gwandu, there is no testimony or other evidence in the record regarding Gwandu's understanding of the arrangement with Nicholson.  Gwandu is believed to have returned to his home county of Algeria.  (Nicholson Testimony, Doc. #87, 52:4–6.)

insurance of his own.  Gwandu has never been an employee, officer, or director of GG Roofing, and Nicholson has never been Gwandu's employee.[6]  (Nicholson Testimony, Doc. #87, at 17:20–18:3.)

Nicholson testified that when Gwandu told him about the possibility of the roofing job with Park Lane, Nicholson told Gwandu that Park Lane could be added as an additional insured on the Policy in order to secure the bid on the Regency job provided that Nicholson would be the supervisor on the job.  (Nicholson Testimony, Doc. #87, at 8:2–9:12.) Nicholson then authorized Park Lane and Regency to be added as additional insureds under the Policy, which they were.  (Pl.'s Ex. 1, at 53–54; Pl.'s Ex. 3, at 25–26; Nicholson Aff. ¶ 15, Doc. #87, at 30.)[7]  The language of the policy limits Park Lane and Regency's coverage as additional insureds to "liability arising out of the Named Insured's operations or premises owned by or rented to the Named Insured." (Canal Ins. Policy, Pl.'s Ex. 1, at 53–54; Pl.'s Ex.

---

[6]    The Court acknowledges that Nicholson described his working relationship with Gwandu as that of employer/employee, with Gwandu being the employer and Nicholson being the employee, in a sworn statement taken in the underlying action on April 15, 2011.  (Nicholson Testimony, Doc. #87, at 35:16–36:2.)  However, in a later sworn statement taken on May 5, 2011, Nicholson attested that Gwandu had never been his employer (Nicholson Testimony, Doc. #87, at 5:17–20 & 17:22) and described his business relationship with Gwandu and G&G Roofing as that of a contractor/subcontractor relationship, in which Gwandu hired him to be the quality control officer on those roofing jobs for which Gwandu was using Nicholson's liability insurance. (Nicholson Testimony, Doc. #87, at 8:2–18.)  Taking this evidence in the light most favorable to Canal, as the Court must in ruling on Park Lane's motion for summary judgment, the Court finds that the evidence supports Canal's assertion that Nicholson was never a regular employee of Gwandu and his corporation, G&G Roofing, Inc.

[7]    Nicholson testified under oath that he never informed Canal or his insurance agent, John Harris, that Gwandu had authority to communicate on his behalf regarding his insurance or to make changes to his insurance policy.  (Nicholson Testimony, Doc. #79-6, at 17:10–18:14.)

6

3, at 25–26.)[8]

After Park Lane and Regency were added to the Policy, Gwandu never told Nicholson that G&G Roofing had secured the job, and he proceeded to perform the roofing work for Regency without involving Nicholson in any way.  (Nicholson Testimony, Doc. #87, at 13:15–14:11.)  Nicholson stated that Gwandu told him that he never got the job with Park Lane.  (Nicholson Testimony, Doc. #87, at 12:1–9.)  Nicholson and his company, GG Roofing, never performed any roofing work for Park Lane on the Regency Club Condominiums. (Nicholson Testimony, Doc. #87, at 13:15–14:11.) Gwandu also never paid Nicholson any portion of the fee received from the condominium job, as Gwandu had done in the past on similar jobs pursuant to their arrangement.  (Nicholson Testimony, Doc. #87, at 12:17–13:14.)

## IV. LEGAL STANDARD

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v.*

---

[8]   The additional insured provision of the Policy further provides, in relevant part:

The insurance afforded by this endorsement . . . shall not apply to damages arising out of the negligence of the person(s) or organization(s) added by this endorsement.

It is further understood and agreed this insurance does not apply to "bodily injury" and "property damage" arising out of any act or omission of the ADDITIONAL INSURED(S) or any of their "employees", other than the general supervision by the additional insured(s) of your ongoing operation performed for the additional insured.

(Canal Ins. Policy, Pl.'s Ex. 1, at 53–54; Pl.'s Ex. 3, at 25–26.)  The word "operations" is not specifically defined in the Policy.  (*See* Pl.'s Ex. 1; Pl.'s Ex. 3.)

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A court should grant summary judgment when the pleadings and supporting materials show that no genuine dispute exists as to any material fact and that the moving party deserves judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To shoulder this burden, the moving party can present evidence to this effect. *Id.* at 322–23.  Or it can show that the nonmoving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof. *Id.*

If the moving party meets its burden, the non-movant must then designate, by affidavits, depositions, admissions, or answers to interrogatories, specific facts showing the existence of a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995).  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in his or her favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  Thus, summary judgment requires the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  A mere scintilla of evidence is not sufficient to survive summary judgment. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1323 (11th Cir. 2007) (citing *Gunning v. Cooley*, 281 U.S. 90, 94 (1930) ("A mere scintilla of evidence is not enough to require the submission of an issue

8

to the jury.")).

A court ruling on a motion for summary judgment must believe the non-movant's evidence. *Anderson*, 477 U.S. at 255. It also must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Id.* After the nonmoving party has responded to the motion, the court must grant summary judgment if there exists no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## V. DISCUSSION

The primary issue to be decided in this case is whether GG Roofing and G&G Roofing were operating as separate legal entities when Park Lane's liability for the alleged faulty construction of the Regency Club Condominiums arose.[9] Canal contends that because its insurance contract is with Nicholson d/b/a GG Roofing, not Gwandu or G&G Roofing, and because the roofing work out of which Park Lane's liability arose was performed solely by Gwandu and G&G Roofing, not Nicholson and GG Roofing, it owes Park Lane no coverage under the Policy. Canal further argues that the additional insured provision in the Policy is a narrow provision that was never triggered, and therefore, provides no coverage to Park

---

[9]   Park Lane asserted counter-claims against Canal on the grounds that it was a third-party beneficiary of the insurance contract between Nicholson and Canal and that it was entitled to reformation of the insurance policy. Although Canal preemptively addresses these arguments in its Second Motion for Summary Judgment, Park Lane does not rely on those two theories in its motion for summary judgment or address them in its response brief. In support of its summary judgment motion and in response to Canal's summary judgment motion, Park Lane relies exclusively on its alter-ego theory. Thus, the Court does not analyze the third-party beneficiary and reformation arguments in reaching its decision on the cross-motions for summary judgment now before it.

Lane, because G&G Roofing, rather than Nicholson, performed the roofing work for Park Lane on the Regency Club project.

Park Lane takes the contrary position that the additional insured provision in the Policy was triggered because GG Roofing and G&G Roofing were operating as a single legal entity at the time Park Lane's liability arose. Thus, Park Lane argues that it is entitled to coverage as an additional insured under the Policy.

After reviewing the parties' briefs, the evidence, the applicable law, and the record as a whole, the Court concludes that Park Lane has failed to present sufficient evidence that it was an additional insured with respect to the claims in the underlying action, and therefore, it is not entitled to coverage under the Policy.

## A.   <u>Construction of the Policy</u>

In Alabama, general rules of contract law govern the construction of an insurance contract. *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005); *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001).[10] Alabama law requires that an insurance contract be construed "strictly against the insurer and liberally in favor of the insured." *State Farm Fire & Cas. Co. v. Erwin*, 393 So. 2d 996, 997 (Ala. 1981) (quoting *Tyler v. Ins. Co. of N. Am., Inc.*, 331 So. 2d 641, 644 (Ala. 1976). This means that ambiguous provisions of an insurance contract will be construed in favor of the insured and

---

[10]     A federal court sitting in diversity must apply the substantive law of the forum state, unless federal constitutional or statutory law is contrary. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991). In this case, Alabama law applies.

against the insurer. *Erwin*, 393 So. 2d at 997. If the terms of an insurance policy are unambiguous, however, a court must enforce the policy as written. *Twin City Fire Ins.*, 817 So. 2d at 691. A court cannot rewrite a policy to include or exclude coverage that was not intended. *State Farm Mut. Auto. Ins. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009) (quoting *B.D.B. v. State Farm Mut. Auto Ins. Co.*, 814 So. 2d 877, 879–80 (Ala. Civ. App. 2001)). Whether a provision of an insurance policy is ambiguous is a question of law to be decided by the Court. *Herrera*, 912 So. 2d at 1143.

When construing an insurance policy, "a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them." *Id.* If the terms in an insurance policy are "reasonably certain in their meaning," they are not ambiguous as a matter of law and the rule of construction favoring the insured does not apply. *Brown*, 26 So. 3d at 1169 (internal citation omitted). In *Brown*, for example, the Alabama Supreme Court held that a minor child claiming to have status as an insured under the terms of her father's liability insurance policy was not entitled to coverage because, under the plain and unambiguous terms of the policy, she was not a "relative" of the named insured as that term was defined in the policy. *Id.* at 1170.

The policy terms that the Court must construe are contained in the additional insured provision in the Policy, which provides coverage to the additional insured for "liability arising out of the Named Insured's operations or premises owned by or rented to the Named Insured." (Canal Ins. Policy, Pl.'s Ex. 1, at 53–54; Pl.'s Ex. 3, at 25–26). The terms "arising out of the

11

Named Insured operations" are not further defined in the Policy and the parties have not referred the Court to any controlling Alabama case that defines those terms in the context of additional insureds.  However, courts in other jurisdictions have noted that in the insurance industry, "additional insured provisions . . . are intended to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured."  *Harbor Ins. Co. v. Lewis*, 562 F. Supp. 800, 803 (E.D. Pa. 1983); *see also Gen. Motors Corp. v. Schneider Logistics, Inc.*, Civ. Action No. 06-2195, 2008 WL 2785861, at *9 (E.D. Pa. July 17, 2008) ("Although the parties have not directed the court to a case in Michigan directly on point, the 'arising out of your operations' language has been nearly universally interpreted to cover the additional insured for the additional insured's negligence.").

Canal contends that the clear and unambiguous terms of the additional insured provision in the Policy only extend coverage to Park Lane for vicarious liability arising out the work actually performed by Nicholson and GG Roofing, its named insured.  Given that the express language of the provision limits coverage to the "operations" of the named insured, and considering the common usage and purpose of additional insured provisions in the insurance industry, the Court agrees with Canal's contention and concludes that the terms of the additional insured provision in the Policy are unambiguous.  Thus, the rule of construction favoring the insured does not apply in this case.  It is undisputed that Paul Nicholson did not supervise G&G Roofing's work for Park Lane or perform any work for Park Lane relating to Park Lane's subcontract with G&G Roofing for the Regency Club project.  As a result, Park Lane is not entitled to coverage under the express language of the

Policy.

Having reached this conclusion, Park Lane's only path to recovery under the Policy lies in its argument that GG Roofing and G&G Roofing were one and the same legal entity or, stated differently, alter-egos of one another. If Park Lane could show that the two companies were indeed alter-egos, then any roofing work G&G Roofing performed for Park Lane while the Policy was in effect would also be considered the work of the named insured, GG Roofing, thus resulting in coverage for Park Lane under the additional insured provision in the Policy.

**B.      Alter-Ego Doctrine**

Park Lane argues there is substantial evidence establishing that Nicholson's business, GG Roofing, and Gwandu's corporation, G&G Roofing, were not separate legal entities, but rather alter-egos, at the time it entered into the subcontract with G&G Roofing for the Regency Club project. As explained below, the Court finds this argument to be clever but unconvincing.

Park Lane contends that a single entity—GG/G&G Roofing—was the named insured under the Policy. Park Lane further contends that this single entity—GG/G&G Roofing—entered into a subcontract with Park Lane, added Park Lane as an additional insured to the Policy, and performed the roofing work that gave rise to Park Lane's liability in the underlying action. As a result, Park Lane argues that it is due summary judgment in its favor because it is entitled to coverage as an additional insured under Nicholson's Policy. In the alternative, Park Lane argues that there is at least a question of fact as to whether the two

roofing businesses were separate legal entities at the time Park Lane entered into the subcontract, making summary judgment improper.

Under Alabama law, a "separate corporate existence will not be recognized when a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another . . . ." *Forest Hill Corp. v. Latter & Blum*, 29 So. 2d 298, 302 (Ala. 1947). In other words, the determination of alter-ego status depends on the level of control one party has over another. *See* 1 Fletcher Cyc. Corp. § 41.10 ("To determine whether the alter ego theory applies, courts must look at the *level of control* evidenced by the actual, substantial relationship of the parties . . . .") (emphasis added). This is a fact-intensive question. *See Ex parte AmSouth Bank of Ala.*, 669 So. 2d 154, 156 (Ala. 1995) ("Whether the separate legal entity of a corporation may be 'pierced' and personal liability imposed is '*a question of fact* treated as an evidentiary matter to be determined on a case by case basis.'") (emphasis in original) (quoting *Messick v. Moring*, 514 So. 2d 892, 893 (Ala. 1987)).

The Supreme Court of Alabama has emphasized that it is "impossible to catalogue the infinite variations of fact that can arise but there are certain common circumstances which are important." *Evntl. Waste Control, Inc. v. Browning–Ferris Indus., Inc.,* 711 So. 2d 912, 914 (Ala. 1997) (quoting *Duff v. S. Ry.,* 496 So. 2d 760, 762–63 (Ala. 1986)). These factors are: (1) one company owns all or most of the capital stock of the other company; (2) the two companies have common directors or officers; (3) one company finances the other company; (4) one company subscribes to all the capital stock of the other company or otherwise causes

14

its incorporation; (5) one company has grossly inadequate capital; (6) one company pays the salaries and other expenses or losses of the other; (7) one company has substantially no business or assets except that provided to it by another company; (8) in the papers of one company or in the statements of its officers, the other company is described as a department or division of the first company, or its business or financial responsibility is referred to as the first company's own; (9) one company uses the property of another company as its own; (10) the directors or executives of one company do not act independently but take orders from another company; (11) the formal legal requirements of a subsidiary company are not observed. *Evntl. Waste Control*, 711 So. 2d at 915 (quoting *Duff v. S. Ry.*, 496 So. 2d 760, 762–63 (Ala. 1986)); *see also Askew v. R & L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1302 (M.D. Ala. 2009) (Thompson, J.)  (citing *Evntl. Waste Control*, 711 So. 2d at 915);  *AAA Cooper Transp. v. Wes-Pak, Inc.*, No. 1:11CV181-WHA-CSC, 2012 WL 847470, at *6–7 (M.D. Ala. Mar. 13, 2012) (refusing to exercise personal jurisdiction over one defendant company under an alter-ego theory where plaintiff presented facts that, although relevant to three of the *Duff* factors, did not sufficiently support the inference that one defendant company was controlled by another defendant company).

Courts will not apply alter-ego or instrumentality theories without sufficient evidence of control.  For example, the Alabama Supreme Court has found that a mere overlap in management does not, by itself, result in a finding of alter-ego status. *Matrix–Churchill v. Springsteen,* 461 So. 2d 782, 788 (Ala. 1984).  Similarly, a loan of money from one company to another does not make the two companies liable for the obligations of each other. *See*

*Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1104 (5th Cir. 1973).[11]

In *Askew*, a personal liability action, the district court held that summary judgment was not proper where the defendant presented the court with evidence that the company that employed the tractor-trailer driver who was responsible for a collision and the company that owned the tractor-trailer were a single entity.  676 F. Supp. 2d at 1302.  In reaching its decision, the district court relied on evidence that the two companies were managed by the same officers, owned by the same family, and that one company owned the other company in part.  *Id.*  The evidence in that case also showed that the two companies were represented on the company's website to be "sister" companies operating under a single trade name.  *Id.*

After reviewing the summary judgment evidence cited by the parties in their briefs, and applying the above factors set forth by the Alabama Supreme Court, the Court finds that there is insufficient evidence to support Park Lane's contention that GG Roofing controlled G&G Roofing so as to justify applying the alter-ego doctrine in this case.  In making this determination, the Court is guided by the long-standing rule that a mere scintilla of evidence is not sufficient to survive summary judgment.  *Allen*, 495 F.3d at 1323 (citing *Gunning*, 281 U.S. at 94 ("A mere scintilla of evidence is not enough to require the submission of an issue to the jury.")).

---

[11]   In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

The only factor upon which Park Lane has supplied any evidentiary support whatsoever is that the owner of G&G Roofing, a business incorporated under the laws of Alabama, loaned Nicholson some money to help him purchase the Policy with Canal. (Nicholson Testimony, Doc. #87, at 46:13–17.)  However, this fact, standing alone, does not create a genuine dispute that G&G Roofing was operating as a mere instrumentality of Nicholson's small-scale residential roofing business when performing the commercial roofing work for Park Lane.  *See Forest Hill Corp. v. Latter & Blum*, 29 So. 2d 298, 302 (Ala. 1947). The fact that Nicholson agreed to provide additional insured coverage to Park Lane for G&G Roofing's work if G&G Roofing gave Nicholson supervisory responsibilities and compensation for the Regency job likewise fails to create a genuine dispute that the two roofing businesses were alter-egos.  Although this agreement evidences a relationship between the two entities, it is not enough to indicate that they were not acting independently of each other when G&G Roofing performed the work for Park Lane.  In fact, the evidence establishes the contrary: that as to the Regency job, the two companies were acting completely independently of each other.

There is no dispute that Nicholson did not control the work on the Regency job and never even set foot on the work site.  There is also no evidence that Nicholson had any control over the business operations of G&G Roofing or that G&G Roofing had any control over Nicholson's business operations.  Under Alabama law, it is irrelevant that Nicholson and G&G Roofing were operating from the same mailing address without any further evidence that G&G Roofing used the property of Nicholson as its own, or vice versa.  No such evidence

has been offered by Park Lane.  Furthermore, Nicholson has never been an owner, officer, director, or regular employee of G&G Roofing. (Nicholson Testimony, Doc. #87, at 5:17–6:12.)  Indeed, Nicholson testified in a sworn statement taken in the underlying action that he "worked *with* [Gwandu], not *for* him, when a job came up and when insurance was necessary."  (Nicholson Testimony, Doc. #87, at 51:6–9) (emphasis added.)

The Court is satisfied that Canal has established that the undisputed facts support judgment in its favor as a matter of law as to its claim that it does not owe coverage to Park Lane as an additional insured under its Policy with Paul Nicholson d/b/a GG Roofing. Moreover, the Court finds that Park Lane has failed to present more than a scintilla of evidence necessary to survive summary judgment on the issue of whether Nicholson's business, GG Roofing, and Gwandu's corporation, G&G Roofing, Inc., were operating as single legal entity.

## VI. CONCLUSION

Accordingly, and for the foregoing reasons, it is hereby ORDERED as follows:

1.    The Second Motion for Summary Judgment by Canal Indemnity (Doc. #78) is GRANTED.

2.     The Motion for Summary Judgment by Park Lane Construction (Doc. #82) is DENIED.

3.     Canal's pending Request for Oral Argument on Plaintiff's Second Motion for Summary Judgment (Doc. #112) is DENIED as MOOT.

4.     Park Lane's pending Motion for Leave to File Amended Affidavit of L. Bratton

Rainey, III (Doc. #118), regarding the issue of litigation costs, is DENIED as MOOT.

5.     All deadlines, hearings, conferences, and the trial set in this case are CANCELLED.

6.     A separate final judgment will be entered consistent with this Memorandum Opinion and Order.

DONE this the 7th day of January, 2013.

_____/s/ Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE

19